Conrad v. Boiron. Mr. Weldman. Good morning. May it please the Court, my name is Stuart Weldman and I represent Chan Conrad. I guess this is another one of those cases you previously mentioned, which is on the, quote, cutting edge of the issues here about picking off plaintiffs. I hope I can convince you that it's not on the cutting edge. Well, here's my problem with your case. I mean, obviously everyone has different facts and everyone comes up with a little bit different situation, but it does seem like the people who are challenging this Osillo remedy have been out there for quite a while and there's been this class action in California, there was the settlement. There's been, as opposed to no opportunity to try to explore class treatment, there's been ample opportunity in this case. And I'm just not sure what we're here for. I mean, what Mr. Conrad would add to this, what discovery would reveal, what you think is going to happen. I totally take your point about these being sugar pills, but I'm not sure that that matters. Well, if Your Honor is interested in the procedural history of the Osillo cases, I'm happy to tell you. There was an original class action filed, the Gallucci action, which settled and settled for a class period that ended July 27, 2012. Right, yes. There were really no labeling changes whatsoever of the key representations. The representation has been, and the challenge representation has been the same from the beginning to today. And that is that Osillo provides relief of flu-like symptoms. So the Gallucci settlement settled a case on a nationwide basis that ended in July 27, 2012. Mr. Conrad filed a case seeking a class for purchasers subsequent to July 27, 2012, both in Illinois and on a multi-state basis. So those people were injured and they're continuing to be injured by what we contend to be the sale of a sugar pill as a flu remedy. So there is something that's going on here. Just because, and the California litigation really only involved a very small, about one-year class period. The court certified a very, very limited class, very small period, maybe a year, year and a half. So the fraud case here is substantive. There's nothing that has been. It's the same fraud, though. Yes. And I guess in this instance we have, with respect to class certification, we have a question whether Mr. Conrad would be an adequate representative of the class, given the offer, unaccepted, I understand. This is the same Campbell-Ewald issue we've been talking about. But the unaccepted offer represented by the Rule 67 deposit of the $5,025, which does sound like much more. These pill bottles cost about $20 apiece for, like, 12 doses, according to the picture that you had in the appendix. So the district court doesn't actually say he has no standing or anything. It's really more you're not an adequate class representative. Well, I read there were two series of orders, Your Honor. The first order was the judge's order of the first dismissal order, in which he did one thing right. He sustained the plaintiff's claim. He said the plaintiff stated a valid claim for consumer fraud. What the judge did in that particular order was find him to be an inadequate class representative. Right, right. Because he rejected an earlier offer, what was purportedly a Rule 68 offer. He says you can't pursue, he's saying in the Grice case, you can't persist in suing after you've won. Well, of course. I mean, but that's, of course, you know, the chicken before the egg. He had brought a class action. He was seeking class action status. The judge sustained his consumer fraud claim and then said, I'm striking your class allegations because you were offered to settle and you rejected it and therefore you're an inadequate class representative. That was the first order. Wasn't he made an offer of judgment before class certification was sought? Am I wrong? Well, it's a little tortured, Your Honor. What happened was is that we attempted to add him to another case that was pending and instead decided to just file a new case. Before we filed that case, Your Honor, the defendants presented us with a Rule 68 offer of judgment. It was in a pleading form. For an unfiled case. For an unfiled case. So either way, it was a Rule 68 offer. It expired by its own terms, even though it wasn't in a case to begin with, which was a little odd. And that was his refusal to accept that whatever you want to call it, a Rule 68 offer or just a pre-litigation offer, was the basis upon which Judge Hart in his first order ruled that he was an inadequate class representative. Now, do you think Judge Hart might have meant, I mean, you make much of the idea that, gee, you know, if you're really trying to hang in there and represent the class, that doesn't make you inadequate. All right. But if what Judge Hart was really saying is you at least no longer have any live dispute with the defendant, then that would make you atypical, it seems to me, at a minimum, if there are lots of other people out there who actually do still have a live dispute with the defendant. But why would you pick the one person who's resolved everything? I mean, that begs the whole question as to why we're here, which is whether or not you can pick off. No, but can a defendant somehow pick off in this way? This is not resolved yet. I say under Chapman and under Campbell, Ewald, it's very clear the answer is no, because he didn't accept the offer. So he has a live controversy. It's clear under either under Chapman or Campbell, Ewald, we can take whichever passages we want to choose. He didn't accept the offer. Therefore, he has a live claim. He has a live claim not only for his individual damages. He has a live claim for a class action that he is seeking, and he has a live claim for injunctive relief, which I also would like to take some of my time to discuss, Your Honor. Okay. But I certainly don't want to set you off. And if you have further questions, the fact is that he rejected that offer. It was his right to reject that offer. And his case at that point in time wasn't mooted. And now we come back to the point where the judge sustains his claim but then says, I'm going to entertain a deposit of funds motion. And it's on the basis of the deposit of funds that somehow moots this case. And I know, we all know, that Judge Ginsburg. Well, there's that cryptic little bit toward the end of Campbell-Ewald, which will eventually become clarified, I'm sure. Maybe. But right now that cryptic comment is that the court didn't discuss it, didn't rule on it one way or the other. So, therefore, in this circuit, Chapman is still good law. And Chapman is very clear. An unaccepted offer of settlement does not moot a case. So here we have this odd procedural device. And that's all it is. Rule 67, I took a look at it yesterday again. Rule 67 is just a procedure to deposit funds. There's nothing in Rule 67 that says when those funds are deposited, oh, by the way, the case is mooted, the case is over, your claims are dismissed. There's nothing in there, at least that I saw. I looked at the annotations. I couldn't find anything. It's just merely a procedure. It's a procedure that I believe was adopted from old common law to if somebody wants to deposit some money in the court's registry. The fact of the matter is, is that how that act of depositing some funds somewhere, which is the same offer as they offered pre-litigation, which he rejected, how does that somehow transform it into something in which a district court can force a party to accept? Well, they're actually the statutes that Rule 67 refers to that deal with the disbursement of those funds, 2041 and 2042. So that's where the substance comes in. Well, the point is, is that if we're going to allow it, if this court's going to allow that particular procedure to be acceptable, then there will be no class actions because it's just- No, you could do that in every case. You could do it in every case. And that means, well, there's no Rule 23. So we're letting the exception swallow the rule there. And, of course, it's completely contrary to Chapman and completely contrary to Campbell Ewald. As Campbell Ewald stands- Do we have any idea-this is a different question-how many people Mr. Conrad thinks are in this class? Because this is a very small value class. So how do we get up to the five million? Oh, we allege it's a multi-state class. Right. I am actually the counsel in a case in which this circuit affirmed Judge Nargle's certification of a multi-state class. We represent-if the multi-state class is granted, there is no question about the jurisdictional amount because we've pled approximately half of the country. Buys these sugar pills? What a discouraging thought. What? I'm sorry? I said buys these sugar pills, and then I said what a discouraging thought. Yeah, yeah. Well, but so anyway, Your Honor, I would like- So you complain that you haven't had enough discovery, but apparently that's really not the case. No, we don't complain that we didn't have enough discovery. Yes, there was an agreed order. Right, I thought all the discovery was being shared. We didn't have a fair opportunity to present our class motion. To present the motion. Okay. I mean, in fact, there was a-at that time, Chapman had not been decided when we filed this case, so we filed- Well, you filed the placeholder motion. The placeholder motion, which was entered and continued. Which is what we said you should do. Right. We followed Damascus, and we did that. So the point here is not to-believe me, if we were allowed to proceed with a fair hearing on class certification, this is a clear-cut consumer fraud class action. It's a paradigm for it. This court has recognized these types of small-claim, excuse me, large-aggregate consumer fraud cases where there's uniform representations, and clearly selling sugar for a flu remedy, I think we can see, a priori is going to be a predominantly factual and legal question that should predominate through class. But we didn't have an opportunity to present that at all because the judge cut it short with his adequacy ruling. Real quick, I see because my time is running out. The injunctive relief issue was discussed a little bit before in the prior case. It's really a simple issue. Section 10A of the Illinois Consumer Fraud Act provides that any person who is injured has a claim for damages. That gives them Article III standing to pursue an Illinois Consumer Fraud Act claim. Section 10A of the Illinois Consumer Fraud Act makes it clear that incident to a successful result on a damages claim, the court in its discretion can decide to enjoin the conduct that has been proven to be a violation. So the legal issue, I'll spare you elaborating this, we're familiar with the legal issue, which is really, in some sense, do you need to show separate Article III standing for each element of the remedy, or is it enough once you've got your standing for the damages to see if there is, in fact, anything in this particular case incidental? And, you know, we are not free to say that a state statute overrides Article III. You will agree. I would say a state statute could not overrule Article III. However, it is not an Article III issue. Because even if we had not requested injunctive relief, even if all we had done was pursue the plaintiff's individual damages claim, just his individual damages claim, the option of injunctive relief still remains because the Illinois legislature provided in Section 10A that the lower courts, which this district court is sitting as in Erie, a lower Illinois state court, the lower courts have the discretion on their own to entertain the possibility of injunction. If there's a live claim. Right. But I will let you take your last minute for rebuttal. Okay. Thank you very much, Your Honor. Sure. Ms. Corcoran. May it please the court, my name is Kelsey Brown Corcoran. I'm here on behalf of the appellee's defendants. I thought I would start with the injunctive claim. Justice Ginsburg in Laid Law, Friends of the Earth v. Laid Law, specifically said that you have to establish standing under Article III for each form of relief sought. The court has repeated that again in Daimler Chrysler v. Cuno, Summers v. Earth Island, Monsanto v. Gertsen Seed Fund, and it also goes all the way back to the decision in 1980 in the city of Los Angeles. But the question is, you wouldn't, I mean, it's a little weird. If you've got standing for damages, the case is going to go forward, and then it's going to reach a point where maybe somebody asks for an injunction. And, of course, at that point, if there is no adversity with respect to the potential injunctive relief, you know, you're not going to violate the law again, you're not going to speed again in Los Angeles, you're not going to ever, you know, make the mistake of buying a silo again or whatever. I mean, there are going to be situations where the judge is going to say, in keeping with these things, I don't have the right predicate for an injunctive relief right now. But it's not the kind of thing that you chop off at the very front of the lawsuit. For all I know, there might be some reason sometimes to have an injunction in conjunction with this kind of consumer fraud case, and in other times, not. Maybe an injunction that says, change your label so that, you know, in the future, I won't be misled by some aspect of your label. So I think that so much has to happen between here and there that this isn't a useful place to stop. So I would, all five of the Supreme Court cases I just cited, frame this as an issue of Article III standing. And I'm not disagreeing with that, but when you reach it, I mean, the whole case is going to go forward, because if you're chopping up relief, you know, damages, specific performance, injunction, this and that, all these different remedies, you're not going to decide in advance of knowing the facts, for example, for some things, whether there is still some live injury that the plaintiff before the court has that would be suitable for injunction relief. So it's a timing point that I'm making. So I think the timing point is very important in a case where it's not clear from the allegations whether the plaintiff is going to be able to prove. But everybody's saying, well, you know, in consumer cases, you know, fool me once, shame on you, you know, et cetera. You know, you're just saying, well, of course, you know, nobody's going to buy a silo again, or nobody's going to buy, nobody's going to go into a homeopathic store again. And that seems a little facile to me. So there are a number of consumer fraud cases where you would be able to show a future risk of injury. Levy-Coles is a case that's cited in the briefs where there was deceptive advertising of retail prices as sale prices. And so under that circumstance, the plaintiff might have an interest in going back to the store. So what we're talking about here is a much narrower category of cases where the plaintiff is actually alleging that the product is worthless and that they have no intention of purchasing it again. And that is clear from the complaint. It's clear on the face of the complaint. And even in the blue brief on page 32, the plaintiff concedes it. So this is not a case where we need to continue in order to figure out whether the plaintiff has the standing to bring the claim that's clear on the face of the complaint. And so, you know, I think because of the cases I've cited, and I would also say this court's decision in Gates v. City of Chicago, where at the beginning, before class was certified, the plaintiff there sought the return of seizure of funds. And this court said your restitution claim cannot go forward because you have already received those funds back. However, your due process claim can. And it said you cannot get class certification where you don't have standing for the claim initially. So that's, I think, exactly on point as well. But I will say, even if this court thinks of this as something other than standing, you get the exact same result under Areola v. Godinez, where the court said it declined to treat this as an issue of standing, but it explained you're certainly not an adequate representative if you don't have a risk of future injury. I want to ask you this, if I might. Is there a legitimate purpose in a follow-up class action like this one if Bueron makes it hard for consumers to discover their right to a refund? Or if the product is essentially, you know, worthless, as Mr. Conrad alleges it is, such that its sale on any terms would amount to consumer fraud? So I think that's a great transition into the question of whether the class certification was denied. Is that the context in which you're asking that? Yes. So here we have, as Judge Wood pointed out, an issue that's been litigated extensively before this lawsuit. And Bueron entered a nationwide class settlement that provided for a 14-day refund period. It looked like a terrible settlement to me because, oddly enough, the only way you could find the refund procedure was by going on Bueron's website. And you had to have tremendous documentation that people normally don't keep, the UPC code, their receipt, this and that. And you required them to write in for the refund. You didn't have, once you were on the website, there wasn't any kind of electronic website-based form to fill out. So we live in a world where people don't even know what a stamp is. So the fact that this wasn't done electronically struck me as a pretty poor substitute for a refund. Well, so the settlement was done with an experienced mediator. It was examined by the District Court. That may be. We've turned down similar settlements. And the Ninth Circuit approved the settlement as well. We're dealing with a very small box, and there were also injunctive relief as part of the settlement that required it. The parties ultimately decided that a cross-reference to the website, where everyone's got a phone right now, was the most effective way of getting all the information to the customer. But then they have to fill out a separate piece of paper, find an envelope, put it in an envelope, and mail it to Bueron, right? So this was the – yes. It was just a UPC code and a receipt. There is a declaration that's uncontested from Bueron's vice president explaining that they have been granting these refund requests even beyond the 14-day period. Anytime there's a request from a store, and we'll grant them as long as there's no – it doesn't appear fraudulent. They are routinely granting those. And so this brings us to Aquedots, which was a similar situation. In Aquedots, the defendant had offered to replace the defective product but had not advertised any sort of refund. But it was uncontested that they were regularly granting refunds to anyone who requested them. The district court explained that the plaintiff might claim that they were unaware of the possibility of a refund, but they knew from the circumstances that counsel was aware and had specifically instructed plaintiff not to ask for a refund. And so that's what the district court was looking at here when it reached the class certification decision. It might be helpful to go over the timing of the class certification. As you pointed out, discovery had been done. Well, they did what we had said. They filed the placeholder. Now, this is all unfortunate that one has to do this, because Rule 23 requires a decision on class certification only at the earliest practicable time, not anymore. It used to say earliest possible time, but it doesn't anymore. And the Supreme Court has required more and more and more information to back up a class cert order, so you really can't ask for it the day of filing. You've got to do discovery. And in this instance, when you intersect that with attempts to pick off the class representative, it does seem like a very nice way of making sure there won't be class actions anymore. So here, the complaint and the motion for class certification were filed at the same time, in November 2013. So they didn't lose their right by waiting too long. No, and the plaintiff requested that the district court stay in consideration of the class motion, which it did. In January, we filed our first motion to dismiss on the pleadings, in which we raised the aqueducts and adequacy problem based on the Gallucci settlement. That wasn't decided. A couple months later, in April, the parties agreed to the coordinated discovery. Discovery moves forward under a scheduling order in the Lewert case. Not long after that, the district court decides to stay this case in order to see what the Ninth Circuit is going to do in Gallucci. So that would move forward an entire year into 2015 at this point. Gallucci is decided. Discovery is completed. We file a motion to dismiss, where we raise the injunctive claim, a number of things, including inadequacy under aqueducts again, which we had raised a year and a half earlier. We attach the Gallucci settlement as an exhibit and ask the court to take judicial notice of it, which is entirely proper under the general electric case. At that point, Mr. Conrad does not argue that he needs additional discovery. He does not argue that he would be able to prove with discovery that the refund program is ineffective. Instead, he attacks the refund program on its own terms, the window, all of the points that you made earlier. At that point, the district court decides it's ready to make a determination based on class certification. And this court explained in Consalvo v. Harris v. Harris that Rule 23c1a governs that determination, not the plaintiff. And so based on the information it had, based on the briefing on the Gallucci settlement, the court felt comfortable determining at that point that Mr. Conrad was an inadequate representative. And so this is not a pick-up case. It's a pick-off case. It's a case where the defendant was already agreed to a nationwide settlement, and Mr. Conrad is simply seeking a copycat suit that does not work. But it was for a period of time after the class closed in the Gallucci case. Years after, actually. So by that time, there was additional information in the market about what was being sold, about whether people were being misled. Yeah, the Gallucci settlement was designed to be forward-facing. So the refund program goes forward and is still in place now. It's now a 30-day refund, and the labeling modification is very quickly on the Rule 67 offer. I think it's a deposit. It's a deposit, yeah. It's a deposit, and it happened after the district court had already decided class certification, and it had allowed reconsideration. This is entirely different than all of the cases cited in Mr. Conrad's brief. There is no concern that the class was being picked off or terminated before there was a fair opportunity to make that argument. Assuming that a Rule 67 deposit can moot an individual plaintiff's claim, doesn't the court first have to enter judgment in that plaintiff's favor? Reading Judge Hart's order, it seems as if he was under the impression that the deposit in and of itself would moot Mr. Conrad's claim. So Justice Ginsburg's opinion and Campbell Ewald's refers to the tendering of the money and then also a judgment in favor of the plaintiff. And says we're not deciding anything. It doesn't say this is okay. It doesn't say that it's okay, but again, that's in the context of a pre-class certification. Here, that is all decided. We're only talking about an individual damages claim. So there's a bit of a belt and suspenders. But that doesn't matter. I mean, if the real issue is X has a claim before the court. Let's assume there's no such thing as class actions. X has a claim before the court, and somebody makes a Rule 67 deposit. We still have to answer the question Judge Rovner asked, which is whether this Rule 67 deposit has any effect on its own, whether the court needs to make some ruling on the plaintiff's case, whether or not the plaintiff is trying to be a class representative. Yes, so we asked that our motion, which was granted, was that the case be dismissed as moot and judgment be entered in Mr. Conrad's favor. But it's not in his favor if you're dismissing his case as moot. You're saying there's no case. It can't be in his favor if it's moot. Right. It's, I think, again, a belt and suspenders approach. The case is done. We agree with Mr. Conrad's citing of Kaplan and Rovner, which suggests that the district courts, once it evinces a clear intent to terminate the suit, then you can come on and appeal. And if he filed tomorrow on the view that he really didn't get full relief, a moot case wouldn't prevent him from filing tomorrow. A dismissal with prejudice that was really a merits dismissal would. Yes. To me, a statute of limitations wasn't a problem. But the check is still with the court there, tendered as an unconditional offer that we have made and that has been paid. So this is an interesting view of contract law, that offers have to be accepted sometimes. Well, this isn't an offer. This is an actual return of the legitimacy. No, but it's a tender, as Justice Thomas pointed out. I think it's consistent with this. Our view is mandated by this court's decision in Gates v. City of Chicago, where, again, the restitution claim was mooted by the fact that the property had been returned, and that's what we've done here. Returned is one thing. A tender that you say, I'm not touching it, is a different thing. I don't know, under Illinois law, whether there's a difference between handing over the cash and handing over a check that we can't take back. Both have the same effect in that the money is no longer ours. It is there for Mr. Conrad. Okay. Thank you. Anything further? I will try to talk fast since I think I only have a minute. You have a minute, yes. Okay. First, your comment about that there was more information in the marketplace after the Gallucci settlement is controverted by the actual record. In the Gallucci settlement, at the very top of the notice to the class, the defendants deny any wrongdoing. They completely deny that they committed fraud. The labeling has stayed the same from the beginning of time until today. As to the class action, that we had an opportunity, Judge Hart entered and continued our class certification motion, and then out of the blue, in the motion to dismiss, he decides that he's going to strike the class allegations without any fair opportunity to present the class certification. And then Aqueducts, even Judge Hart said that Aqueducts didn't apply here because the Boron promise was this obscure thing that nobody could ever really find. I mean, it's really tough. You go on and try it. You have to be appreciative to do it. And Aqueducts, more importantly, was an effective recall where out of a million toys sold, 500,000 to 600,000 were recalled, and more importantly, the defendant agreed to be enjoined. Okay. Thank you very much. Thank you. Thanks to both counsel. We'll take the case under advisement.